UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **GLEN E. SMITH** | **CIVIL ACTION NO. 22-2228** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **GARY GILLEY, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Glen E. Smith, a prisoner at Richland Parish Detention Center ("RPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately July 25, 2022, under 42 U.S.C. § 1983. He names the following defendants: Sheriff Gary Gilley, Nurse Rushing, and Head Nurse Vaughn K.[1] For reasons below, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff alleges that on November 17, 2021, at the Richland Parish Courthouse in Rayville, Louisiana, he slipped, fell, and hit his knees and head. [doc. # 1, p. 3]. Deputies Gibson and Kelly asked Plaintiff if he was "ok." *Id.* Plaintiff responded that his knees and head hurt. *Id.* Another deputy asked Plaintiff if he knew his name, where he was, and if he needed an ambulance. *Id.* Plaintiff responded that he did require an ambulance. *Id.* While he waited on an ambulance, his knees and head began to swell. *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

An ambulance arrived, and a paramedic evaluated Plaintiff and stated that he did not suffer a concussion and did not break any bones in his knees. *Id.* at 6. The paramedic asked Plaintiff if he required hospital care, and Plaintiff stated that he "didn't think so." *Id.*

When Plaintiff returned from the courthouse to RPDC, he could "barely" walk because of the swelling and pain in his knees. *Id.* On November 17, 2021, the same day of his fall, he "contacted the medical staff" at RPDC on his "kiosk account" and explained what happened. *Id.* Plaintiff claims that, although Nurse Rushing responded and provided two ankle wraps, she provided "no medical attention." *Id.*

The same day, Plaintiff filed a grievance on his kiosk account. *Id.* Nurse Vaughn K. responded: "We are aware that you fell at court, they called an ambulance which you refused, Nurse Rushing saw you after returning from court. If you would like to see a nurse file a complete paper sick call Monday-Thursday 5-6 a.m. [sic]." *Id.*

Later on November 17, 2021, Plaintiff filed a "medical emergency" on his kiosk account, stating that he slipped in court, his knees and head were swollen, he was in pain, and he wished to "see a doctor." *Id.* at 7. Nurse Vaughn K. responded that Plaintiff would "be seen by a nurse today[.]" *Id.* Plaintiff claims that he did not receive "any medical that day." *Id.*

On November 18, 2021, Plaintiff contacted the warden on his kiosk account, explaining that he was not "seen" by anyone for his medical needs. *Id.* Nurse Vaughn K. responded, instructing Plaintiff to "fill out a sick call Monday-Thursday 5-6 a.m." *Id.* The same day, Plaintiff asked Nurse Vaughn K. why he was being refused "medical emergency," and Nurse Vaughn K. responded: "you can complete an emergency sick call if you wish, emergency sick call is for emergencies and something you would call an ambulance for." *Id.* Plaintiff replied: "I'm consistently trying to get emergency sick call but you continue to refuse me." *Id.* Nurse

2

Vaughn K. answered, "I got your sick call you'll be seen today. [sic]." *Id.* Plaintiff claims that he did not "see a nurse or anyone that day either." *Id.*

Plaintiff specifically faults Nurse Vaughn K. for: (1) "refusing an inmate [who] was in an accident the right to a medical emergency and treating the accident as if it was a normal sick call"; and (2) lying to him when she stated that he "would be seen by a nurse on" November 17 and 18, 2021, which caused him stress and grief. [doc. # 8, pp. 1-2].

On November 22, 2021, Nurse Vaughn K. evaluated Plaintiff's knees and stated that she was "setting [him] up to see a doctor." [doc. # 1, p. 8]. Plaintiff states that he suffered from pain from November 17-23, 2021. *Id.* On November 23, 2021, Doctor T. Klick evaluated Plaintiff's knees, stated that she could not determine if Plaintiff broke any bones, "set [him] up to go to the hospital in Rayville, LA, the next day for x-rays[,]" and prescribed Advil and Tylenol for his pain and swelling. *Id.*

On November 24, 2021, Plaintiff received x-rays on his knees at a hospital. *Id.* One week later, a physician informed Plaintiff that "nothing was broken in [his] knees[.]" *Id.*

Plaintiff states that he could not walk for three weeks. *Id.*

Plaintiff seeks compensation for his pain and suffering "due to the slip and fall" and the "neglect of emergency medical of the Richland Parish Detention Center medical staff. [sic]." [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

3

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of

professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff fell and hit his knees and head on November 17, 2021, at the Richland Parish Courthouse. [doc. # 1, p. 3]. While he waited on an ambulance, his knees and head began to swell. *Id.* He received medical care from paramedics, who evaluated him and stated that he did not suffer a concussion and did not break any bones. *Id.* at 6. Plaintiff declined hospital care.

Plaintiff suggests, however, that his injuries worsened later that day, alleging that he could "barely" walk because of the swelling and pain in his knees. *Id.* He claims that Nurse Rushing failed to provide any meaningful medical care the day of his fall, stating that she only provided two ankle wraps.[3] He also claims that Nurse Vaughn K. delayed providing medical care until November 22, 2021, when she evaluated his knees and stated that she was "setting [him] up to see a doctor." [doc. # 1, p. 8]. On November 23, 2021, Doctor T. Klick evaluated Plaintiff's knees, stated that she could not determine if Plaintiff broke any bones, "set [him] up to go to the hospital in Rayville, LA, the next day for x-rays[,]" and prescribed Advil and Tylenol for his pain and swelling. On November 24, 2021, Plaintiff received x-rays on his knees at a hospital. *Id.* One week later, a physician informed Plaintiff that "nothing was broken in [his] knees[.]" *Id.*

To encapsulate, Plaintiff essentially claims that he did not receive constitutionally adequate medical care from approximately November 17 or 18, 2021, to either November 22 or 23, 2021. Following his evaluation by paramedics and Nurse Rushing, he did not receive any medical care for four days (November 18-21, 2021). While Nurse Vaughn K. evaluated him and made him an appointment with a physician on November 22, 2021, Plaintiff suggests that he did

---

[3] Plaintiff does not allege that he injured his ankles.

7

not receive any pain medication until November 23, 2021. Thus, after (1) paramedics evaluated him, (2) he declined hospital care, and (3) his swelling worsened, there were five days during which he did not receive any pain medication.

As above, "a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm." *Blank*, 634 F. App'x at 448. "[P]ain suffered during a delay in treatment can constitute a substantial harm . . . ." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017).

While the undersigned is sympathetic to Plaintiff's plight, Plaintiff does not plead substantial harm resulting from the four to five-day delay in receiving medical care. Paramedics did not think that Plaintiff "had any broken bones." [doc. # 1, p. 6]. Later, x-rays confirmed that "nothing was broken . . . ." *Id.* at 8. Plaintiff did suffer from pain, but he does not describe sufficiently severe pain during the four to five-day delay. *See Richard v. Martin*, 390 F. App'x 323, 325 (5th Cir. 2010) (finding, where the plaintiff suffered "neck pain, which resolved within a few weeks, and chronic mild back pain[,]" that the plaintiff did not demonstrate substantial harm resulting "from the alleged 10-day delay in seeing a nurse and/or the 20-day delay in being taken to a doctor."); *Badeaux v. St. Landry Par. Sheriff's Dep't*, 47 F.3d 425 (5th Cir. 1995) (finding no substantial harm where "no more than five days elapsed following Appellant's first request for medical treatment" for his knee and his treatment by a prison nurse, his care at hospitals, his pain medication, and his surgery); *Ramirez v. Stacks*, 260 F. App'x 658, 660 (5th Cir. 2007) (finding, where the plaintiff suffered a tibia fracture, that a delay in treatment

did not cause substantial harm, considering that an x-ray after the delay "did not indicate recent or acute bone pathology, though a broad based exostosis remained.").[4,5]

While Plaintiff does allege that he could not walk for three weeks, he does not plausibly allege that any delay in medical care caused his inability to walk (as opposed to being caused by the initial fall and injuries). In other words, he does not plausibly allege that if he received care

---

[4] *Compare Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009) (finding that pain following a fall was not sufficiently severe during an hours-long delay in receiving an evaluation); *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) (finding no claim where (1) the plaintiff's spinal injury was not "impacted" by a 30 to 45-minute delay in care and (2) no substantial harm occurred because the plaintiff did not detail the severity of her pain and alleged only that, during the delay, she was "moaning in pain."); *with Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (finding substantial harm where the plaintiff had a history of cardiac problems and endured *severe chest pains*, and the nurse responsible for the delay knew he had heart problems and lacked his heart medication); *Galvan v. Calhoun Cty.*, 719 F. App'x 372 (5th Cir. 2018) (holding that an inmate eventually diagnosed with calculus of gallbladder with acute cholecystitis, stated a claim where he alleged that prison officials failed for several days to answer his repeated requests to be taken to the hospital for pain "so severe that he thought he might die."); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999) (finding a plausible claim where, following a failed procedure to remedy a broken jaw, the plaintiff's jaw was "rebroken" and he suffered constant *excruciating pain during the week-long delay* in treatment); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422–23 (5th Cir. 2017) (finding, where an inmate was stabbed and stomped in an attack lasting three to five minutes, substantial harm because the inmate suffered a "tremendous amount of pain" during the over week-long delay); *Coleman v. Sweetin*, 745 F.3d 756, 765-66 (5th Cir. 2014) (finding substantial harm from a month-long delay where the plaintiff fell and "was in so much pain that he was unable to lie down in bed or use the toilet properly," pain overtook his entire body, he was "out of it" due to the pain, and doctors eventually inserted four pins and a plate during hip surgery).

[5] *See also Garrett v. Univ. of Texas Med. Branch*, 261 F. App'x 759, 760 (5th Cir. 2008) (finding, where the plaintiff suffered extreme pain from appendicitis, that he did not suffer "substantial harm as a result of the two-day delay."); *Harris v. Walley*, 436 F. App'x 372, 373 (5th Cir. 2011) (finding, where the plaintiff suffered "constant pain" from a year-long delay in surgery to remove several of his teeth, that he did not suffer substantial harm); *King v. Kilgore*, 98 F.3d 1338 (5th Cir. 1996) (finding, where the plaintiff alleged that the delay in care "prolonged his asthma attack and caused him pain, suffering, and discomfort[,]" that even though "an asthma attack is a serious and potentially deadly problem," the plaintiff did not suffer "substantial harm due to the delay."); *Huff v. Manfredi*, 504 F. App'x 342, 344 (5th Cir. 2012) (finding, where the plaintiff alleged "that the defendants delayed and denied him treatment for an eye infection that caused him constant pain, a swollen cheek, and blurry vision[,]" that the plaintiff did not suffer substantial harm because of "inconsequential delays").

sooner, he would not have suffered an inability to walk for three weeks. In fact, he states that his knees began to swell the day of his injury and before the paramedics arrived. Moreover, when he returned from the courthouse to RPDC (i.e., before any delay in care), he could "barely" walk because of the swelling and pain.

Further, Plaintiff does not plausibly allege that Nurse Rushing was deliberately indifferent to a substantial risk of serious harm. He claims that Nurse Rushing gave him two ankle wraps "but no medical attention." He does not, however, allege that Nurse Rushing *knew of* and disregarded a substantial risk of serious harm. He only alleges that he "explained what happened" to "medical staff."[6]

Paramedics evaluated Plaintiff the same day (before Rushing met with Plaintiff) and stated that he did not suffer a concussion and did not break any bones. Plaintiff declined hospital care. He does not allege that he informed Rushing in any way that his injuries "dramatically increased in severity" after paramedics evaluated him, such that Rushing "would have effectively denied or delayed treatment for a new injury not previously treated . . . ." *See Petzold v. Rostollan*, 946 F.3d 242, n. 42 (5th Cir. 2019). Rather, Plaintiff's allegations suggest that at worst, Rushing deferred to the treatment the paramedics earlier that day. This does not reflect deliberate indifference: "[A]n official defers to prior treatment—and doesn't delay it—when he knows an injured prisoner has recently received medical care and denies the prisoner's additional treatment request for the same injury. . . . [M]erely refusing to provide additional treatment is

---

[6] The undersigned instructed Plaintiff to amend and (i) provide a separate description of what, exactly, each defendant did to violate his rights and (ii) explain how each responsible defendant was deliberately indifferent to a substantial risk of serious medical harm. [doc. # 7]. Plaintiff did not include any additional allegations against Nurse Rushing in his amended pleading. [doc. # 8].

insufficient for deliberate indifference." *Petzold*, 946 F.3d at 242 (finding that a supervisor did not deny or delay treatment because a nurse already treated the plaintiff's injury and the supervisor, who was aware of the prior treatment, simply "*deferred* to a medical professional's prior treatment.").[7] As the court stated in *Petzold*, a plaintiff "cannot disguise [] deliberate inaction as [] deliberate indifference." *Id.*

Finally, Plaintiff does not plausibly allege that Nurse Vaughn K. was deliberately indifferent. He first requested care from Vaughn K. the day of his injuries, after the paramedics and Nurse Rushing evaluated him. He claims that Vaughn K. responded that she was aware that he fell, that he refused further care after "they called an ambulance[,]" and that Nurse Rushing "saw" him after he returned from court. He does not allege that he informed Vaughn K. that Rushing only gave him ankle wraps or that, after he met with paramedics and Rushing, his symptoms increased in severity. Like above, Plaintiff's allegations suggest that at worst, Vaughn K. deferred to the paramedics' and Nurse Rushing's prior evaluations. Again, this does not reflect deliberate indifference.

Plaintiff submitted additional requests for care to Vaughn K. on November 17 and 18, 2021. He claims that Vaughn K. delayed rendering care until November 22, 2021. [doc. # 1, p. 8]. Plaintiff does not, however, plausibly allege that Vaughn K.'s delay was due to deliberate indifference. He does not allege that Vaughn K. ever refused to treat him or ignored his complaints; rather, he alleges that he requested care, that he thought he needed emergency care, and that he did not receive care as soon as he would have liked. "The fact of delay in itself is not

---

[7] *See also Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422–23 (5th Cir. 2017) (stating that a delay may only be inferred by an official's conduct clearly preventing the prisoner from receiving prompt medical treatment).

sufficient to establish deliberate indifference." *Garcia v. Fed. Bureau of Prisons*, 459 F. App'x 458, 459 (5th Cir. 2012). "Unexplained delays . . . constitute negligence at most." *Id.* (*citing Gobert v. Caldwell,* 463 F.3d 339, 351-52 (5th Cir.2006) (stating that "a trier of fact might find negligence in the one week lapse in antibiotic treatment" but concluding that mere negligence could not support a finding of deliberate indifference).[8] For instance, in *Broussard v. Nelson*, 503 F. App'x 259 (5th Cir. 2012), the plaintiff alleged that a correctional center nurse failed to provide prescribed medication despite his repeated requests and failed to timely respond to his emergency call. The court held that the plaintiff's "bare assertion" that the nurse delayed responding to his emergency call did not demonstrate deliberate indifference and did not "clearly evince" a "wanton disregard" for his medical needs.

Ultimately, Plaintiff quarrels with the speed and quality of the care he received. As above, deliberate indifference is an extremely high standard to meet. At best, Plaintiff pleads potential negligence or medical malpractice.[9] He does not describe wanton disregard or a "cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help[.]" *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014).

The Court should dismiss Plaintiff's claims.

### 3. Sheriff Gary Gilley

Plaintiff names Sheriff Gary Gilley as a defendant, but he does not set forth any

---

[8] *See Goosman v. Foti*, 240 F.3d 1074 (5th Cir. 2000) ("Goosman suggests that OPP could have contacted the Federal Bureau of Prisons in order to begin his cancer treatments sooner, but he does not allege any facts to show why his treatment was delayed or that the delay was attributable to deliberate indifference.").

[9] If Plaintiff wishes to pursue negligence or malpractice claims, he should do so in state court.

allegations against Sheriff Gilley.[10] [doc. # 1, pp. 1-3]. A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662. Here, the Court should dismiss Sheriff Gary Gilley because Plaintiff does not raise a claim against him.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Glen E. Smith's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 19th day of September, 2022.

---

[10] The undersigned instructed Plaintiff to provide a separate description of what, exactly, each defendant did to violate his rights. [doc. # 7].

13

_____
Kayla Dye McClusky
United States Magistrate Judge

14